FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 29 2014 ★

BROOKLYN OFFICE

**DUANE MORRIS LLP**
Kevin P. Potere
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Defendant TD Bank, N.A.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

# CV 14    2683

---

NICOLA NUCCI

       Plaintiff,

    v.

PHH MORTGAGE CORPORATION;
COMMERCE BANK, N.A.,

       Defendants.

---

CIVIL ACTION NO.

GARAUFIS, J.

LEVY, M.J.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant TD Bank N.A., formerly known as

Commerce Bank, N.A., ("*TD Bank*"), removes this action, originally brought by Plaintiff,

Nicola Nucci ("*Nucci*"), in the State of New York, Supreme Court, County of Kings, Index No.

2014-03040, and states as follows:

    1.      On February 27, 2014, Nucci filed a complaint against TD Bank, in the State of

New York, Supreme Court, County of Kings, Index No. 2014-03040.  A copy of the Complaint

and all other papers filed in the state court action are attached and incorporated as Exhibit A.

    2.      TD Bank was served on or about March 31, 2014.  This notice of removal is being

filed within thirty days of that date as required by 28 U.S.C. § 1446 (b).

    3.      This action is removable to this Court pursuant to 28 U.S.C. §§ 1332(a)(1) and

1441(a) because the matter is between citizens of different states and the amount in controversy

exceeds $75,000. Specifically, (i) Plaintiff Nucci is a New York resident; (ii) TD Bank is a national banking association that has designated its main office in its articles of association as Wilmington, Delaware and has its main place of business located in Cherry Hill, New Jersey (*see e.g. Wachovia Bank N.A. v. Schmidt*, 546 U.S. 303, 307 (U.S. 2006); and (iii) the value of the mortgage Nucci granted in favor of Defendants exceeds $75,000.[1]

4.  This removal is properly filed with this Court because this is the United States District Court for the district embracing the place where the action was filed, Kings County.

5.  The Complaint and other papers attached as Exhibit A represent all of the proceedings in the state court case and all pleadings that have been served on TD Bank to this point.

6.  Counsel for Defendant PHH Mortgage Corporation has not entered an appearance. A copy of this Notice of Removal is being served on PHH Mortgage Corporation.

7.  A copy of this Notice of Removal is being filed with the Clerk of the Court of the State of New York, Supreme Court, County of Kings and will be served on all parties pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, TD Bank hereby removes this action to this Court and respectfully request that this Court assume jurisdiction of this matter and take all further steps as may be required to determine this controversy.

---

[1]  The original value of the mortgage in December 2005 was $413,352.80 and Nucci's home equity line of credit with TD Bank is approximately $200,000. *See* Exs. A, C.

- 2 -

Dated: April 29, 2014
      New York, New York

                        **DUANE MORRIS LLP**

                        By: _____

                        Kevin P. Potere
                        1540 Broadway
                        New York, NY  10036-4086
                        Telephone: 212-692-1066/212-471-1864
                        *Attorneys for Defendant TD Bank, N.A.*

**Of Counsel:**

Ryan E. Borneman, Esq
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
215-979-1000

## CERTIFICATE OF SERVICE

I, Kevin P. Potere, Esquire, hereby certify that on April 29, 2014 I caused a true copy of

Defendant's Notice of Removal to be served upon the following via federal express:

> Nicola Nucci
> 762 39th Street
> Brooklyn, NY 11232
>
> *Pro Se Plaintiff*
>
>
> PHH Mortgage Corporation
> 1 Mortgage Way
> Mount Laurel, NJ 08054


**DUANE MORRIS LLP**

By: _____

Kevin P. Potere
1540 Broadway
New York, NY 10036-4086
Telephone: 212-692-1066/212-471-1864
*Attorneys for Defendant TD Bank, N.A.*

# EXHIBIT A



INSTRUCTIONS: FILL IN THE NAMES IN THE BOX NUMBER BELOW, THE INDEX NUMBER AND THE DATE THE INDEX NUMBER WAS PURCHASED. COMPLETE ALL BLANKS IN ACCORDANCE WITH THE DIRECTIONS SET FORTH IN BOLD PRINT.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF _____ KiNGS

---------------------------------------------x

NICOLA NUCCI
_____[YOUR NAME(S)]_____

                    Plaintiff(s),

                    -against-
**COMMERCE BANK, NA**
_____[NAME OF PERSON(S) SUED]_____

                    Defendant(s)

---------------------------------------------x

To the Person(s) Named as Defendant(s) Above:

3040\14

Index No. _____/__

Date Index No.
purchased _____

**SUMMONS**

    PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

    YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

Dated: _____, 20__
        [DATE OF SUMMONS]

**NICOLA NUCCI**
_____[YOUR NAME(S)]_____

762 38TH STREET
BROOKLYN, NY 11232

[YOUR ADDRESS(ES) and
PHONE NUMBER(S)]

Defendant's Address  COMMERCE BANK C/O SUPERINTENDENTS OFFICE, ONE STATE STREET, NY NY, 10004
                    [ADDRESS OF PERSON(S) SUED]

Venue:    Plaintiff(s) designate(s) :KiNGS County as the place of trial. The basis of this designation is [CHECK ONE]:

    ☑  Plaintiff(s)' Residence in KiNGS County.
    ☐  Defendant(s)' Residence in CKiNGS County.
    ☑  Other -- Describe: REAL PROPERTY SUBJECT OF ACTION LOCATED HERE

NOTE:  THIS FORM OF SUMMONS MUST BE SERVED WITH A COMPLAINT

2014 FEB 27  PM 4: 29

KiNGS COUNTY CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

————————————————————x

NICOLA NUCCI,
      Plaintiff,

- Against -

PHH MORTGAGE CORPORATION
COMMERCE BANK, N.A.
      Defendant.

————————————————————

Index No.

**COMPLAINT**

TO THE SUPREME COURT OF THE STATE OF NEW YORK

The complaint of the plaintiff, NICOLA NUCCI, respectfully shows and alleges as follows:

1.    The Plaintiff herein, NICOLA NUCCI, is a resident of the State of New York, County of Kings.  NICOLA NUCCI resides at 762 39th Street, Brooklyn, New York, and this is the property which is the subject of this action.

2.    The Defendant herein, PHH MORTGAGE CORPORATION is a corporation which exists under the laws of New Jersey, with an address of 3000 Leadenhill Road, Mount Laurel, NJ 08054, and who designated as its agent for service of process, C/O CORPORATION SERVICE COMPANY, 80 STATE STREET, ALBANY, NEW YORK, 12207-254.

3.    The Defendant herein, COMMERCE BANK, N.A. is not registered to do business, and thus designated that two copies of such process must be delivered in person to the Superintendent's office at One State Street, New York, NY 10004, together with a check for $2.00 made payable to the "Superintendent of Financial Services of New York." Further papers in a case, which do not themselves commence the proceeding against the bank, should be served

directly on the bank or its counsel thereafter. Service may be made by mailing or delivering the papers to the Department as follows:

☐By mail: addressed to New York State Department of Financial Services, Office of General Counsel, One Commerce Plaza, Albany, NY 12257.

☐In person: to New York State Department of Financial Services, Office of General Counsel, One State Street, New York, NY 10004, or to One Commerce Plaza, Albany, NY 12257.

4.    Plaintiff brings this action to obtain a declaration of quiet title on the subject property owned by the Plaintiff. In support of this Complaint, the Plaintiff(s) states:

## FACTS COMMON TO ALL CAUSES OF ACTION

1. This Supreme Court has jurisdiction over this matter under An outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and on its face has that effect, but can be shown by extrinsic proof to be invalid or inapplicable to the estate in question. *Best Inv. Co. v. Parkhill*, Tex.Civ.App., 429 S.W.2d 531, 534. A conveyance, mortgage, judgment, tax-levy, etc., may all, in proper cases, constitute a cloud on title. *Newpar Es Estates, Inc. v. Barilla*, 161 N.Y.S.2d 950, 952. The remedy for removing a cloud on title is usually the means of an action to quiet title. According to Exhibit A, the owner of the subject property, ULWS LAND I., LLC., prior to the filing of this suit, has assigned all its right, title and interest to the Plaintiff, the principal of the Limited Liability Corporation and thus Plaintiff owns the right to bring this action in his sole and separate name.

2. Venue is proper as the Defendant(s) does business or resides in this county, and all acts pertaining to the claims identified in this complaint took place in this county and the subject property is located in this county.

3. During the course of the conduct complained of herein, the Defendants acted on behalf of the remaining Defendants, with the consent of the other Defendants, and subject to their control. Defendant ratified the conduct of the other Defendant.

4. Defendants co-conspired to commit the acts complained of herein.

5. Plaintiff is the owner of the property claimed or is entitled to possession of the REAL AND PERSONAL property because Plaintiff is the purchaser and owner of the real property and owner of all personal property contained therein, Exhibit A.

6. Plaintiff's interest in such property is based upon a written instrument.

7. The Plaintiff, NICOLA NUCCI hereby sues the Defendants, PHH MORTGAGE CORPORATION, COMMERCE BANK, N.A. AND ALL OTHER INTERESTED PARTIES; and alleges:

**FIRST CAUSE OF ACTION – QUIET TITLE**

8. Plaintiff incorporates the facts common to all causes of action, paragraphs 1 – 7, herein, as though set forth in full.

9. This is a verified action to quiet title to real property owned by NICOLA NUCCI in fee simple absolute to the property described herein, located in County of Kings, and more fully described as follows:

Title Number:  03-4705

ALL that certain plot place or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn County of Kings City and State of New York known and designated on a certain map entitled "Map of the farm of Leah Morris in the 8th Ward of the City of Brooklyn which was authorized to be sold by an Act of Legislature of the State of New York passed March 26, 1866 entitled "an Act in relation to Lands devised by Simon Bergen deceased made for the Trustee under the Will of Bergen Compiled from surveys made by Inis G. Bergen C.S., and filed in the Office of the Register of the County of Kings as Map number 756 on May 10, 1867 as by a lot number 738 and which said lot is bounded and described as follows;

BEGINNING at a point on the Southwesterly side of 39th Street distant 175 feet northwesterly from the corner formed by the intersection of the Southwesterly side of 39th Street with the northwesterly side of 8th Avenue;

RUNNING THENCE Southwesterly parallel with 8th Avenue and part of the distance through a party wall 100 feet 2 inches;

THENCE northwesterly with 39th Street 25 feet;

THENCE Northwesterly parallel with 8th Avenue 100 feet 2 inches to the Southwesterly side of 39th Street;

THENCE Southeasterly along the Southwesterly side of 39th Street 25 feet to the point or place of BEGINNING.

10.  Petitioners' title to the above-described property is derived from the Warranty Deed

recorded on 12/6/2005 Document Number 20051104006530010002ECCC4, in the

official records of the County of Kings, # 2005110400653001, to NICOLA NUCCI, of

Kings County, New York.

11.  A copy of said Warranty Deed is attached hereto and incorporated herein as Exhibit "A".

12.  Petitioner resides in this County; and the property which is the subject of this action is

also located in this county, and thus this is the proper venue for this action.

13.  The Petitioner claims a fee simple absolute interest in the estate in the subject property

and seeks to quiet title thereto.

14.  This action is to remove a fraudulently obtained and recorded UNSIGNED note and

Mortgage, Exhibit "B" recorded in favor of PHH MORTGAGE CORPORATION, on the

legal and equitable grounds that the note and mortgage thereon are barred by the doctrine

of the statute of frauds, and the assignment to Mers was attempted as a means of concealing assets in violation of the New York Fraudulent Transfer and Concealment Act NY Debtor Creditor Law §§ 270 to 281, and thus the Plaintiff seeks an equitable order declaring that Exhibit B constitutes a cloud on the title of the Plaintiff and that it must be removed, deemed void ab initio, unenforceable and find that PHH and it successors and assigns be forever barred from enforcement of the unsigned note and mortgage.

15.    Furthermore, the original note and mortgage were purportedly assigned to MERS. As the Court is now aware, Defendant found the following information:

a.    William Hultman, who signed the Corporate Resolution, appoints Attorney Andrew S. Harmon to act on behalf of MERS.

b.    On December 2, 2010 a Hearing was held in United States House of Representatives in which sworn testimony and evidence was taken and accepted from William Hultman of MERS. His sworn testimony is crucial in that he is the person that signed what appears to be a form of a Corporate Resolution for and on behalf of MERS that has been recorded in various places appearing to make appointments and grant authority to many Assistant Secretaries and Assistant Vice Presidents of MERS.

```
1    then.  Does MERS have any salaried employees?
2         A    No.
3         Q    Does MERS have any employees?
4         A    Did they ever have any?  I couldn't hear you.
5         Q    Does MERS have any employees currently?
6         A    No.
7         Q    In the last five years has MERS had any
8    employees?
9         A    No.
```

c.    William Hultman admitted under oath that he did not have the authority to make those appointments or grant any authority for and on behalf of MERS when he signed what appears to be MERS Corporate Resolutions.

d.    On December 2, 2010 a Hearing was held in United States House of Representatives in which sworn testimony and evidence was taken and accepted from William Hultman of MERS. His sworn testimony is crucial in that he is the person that signed what appears to be a form of a Corporate Resolution for and on behalf of MERS that has been recorded in various places appearing to make appointments and grant authority to many Assistant Secretaries and Assistant Vice Presidents of MERS. William Hultman admitted under oath that he did not have the authority to make those appointments or grant any authority for and on behalf of MERS when he signed what appears to be MERS Corporate Resolutions. Therefore each person who signed documents for and on behalf of MERS, whose authority or appointment which purports to come from William Hultman, never had the authority to sign for and on behalf of MERS which make those documents void.  Since those documents are void the assignments from MERS are also void, as are any actions that are taken by those who think that they hold the Mortgage on the property, after the Mortgage was assigned to MERS. Mortgages, not Notes, can be assigned to MERS. However during the above relevant times, MERS could not make an assignment of Mortgages out of MERS.

e.    Therefore each person who signed documents for and on behalf of MERS, whose authority or appointment which purports to come from William Hultman, never had the authority to sign for and on behalf of MERS which make those documents void.

f.    MERS has NO employees.

g.    The authorization to execute documents on behalf of MERS, as it turns out, is NOT authorized, not legal and since the last hearing, MERS is the subject of a CONSENT DECREE by the United States of America, Department of the Treasury, Comptroller of the Currency, Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, Office of Thrift Supervision, Federal Housing Finance Agency, Exhibits A-C.

h.    Since those documents are void the assignments from MERS are also void, as are any actions that are taken by those who think that they hold the Mortgage on the property, after the Mortgage was assigned to MERS. Mortgages, not Notes, can be assigned to MERS. However during the above relevant times, MERS could not make an assignment of Mortgages out of MERS.

i.    The Assignment that was used by the Plaintiff in the above-styled clause was a robo-signed, and fraudulently notarized by notary public that was prosecuted by the California Attorney General using THIS actual FRAUDULENT ASSIGNMENT as the actual evidence against the Notary – the notary signature was missing, but just a line where it belonged. Because the assignment was fraudulent, and missing the notary, there is no proper transfer of the note and mortgage, and the Plaintiff lacked any standing to sue;

16.    Foreclosure is an equitable remedy under the laws of New York. Equity dictates that the unsigned note and deed of trust thereon be deemed void ab initio.

17.    Furthermore, the Note and mortgage, Exhibit C and the assignment of rents thereon, Exhibit D, constitute a predatory loan created by Defendant Commerce Bank, NA to drive the value of the property owned by the Plaintiff down; to entice the Plaintiff to enter

into a loan agreement it knew, or reasonably should have known, was harmful and "toxic" to the Plaintiff; and was done for the purpose of taking undue advantage of the Plaintiff where the Plaintiff had unequal bargaining position with the Defendant.

18.    Equity dictates that the toxic loan be deemed void ab initio and unenforceable in violation of the New York consumer protection laws.

19.    WHEREFORE, Plaintiffs request the Court:

1.    Grant Judgment against the Defendants declaring the Defendants PHH MORTGAGE CORPORATION, COMMERCE BANK, N.A.'s mortgages and unsigned notes thereon, recorded in the official records of this County be deemed null and void; cancelling the Notes and mortgages, finding them void ab initio, (Exhibits B - D), vacated and set aside; quieting title to the property owned by Petitioners and against Defendant and all persons claiming under Defendants.

2.    That the Court further find that the conduct of Defendant PHH MORTGAGE CORPORATION, COMMERCE BANK, N.A.'s in the concealment of assets and predatory lending be deemed evidence of unclean hands of the Defendants; violative of the statute of fraud; violative of the recording statutes and New York Consumer Protection Statutes thus forever barring the Defendants from ever being entitled to recover their fraudulent mortgages and notes under the equitable remedy of foreclosure.

3.    Because foreclosure is an equitable remedy, and the Defendant has unclean hands, the Court should declare that that the Plaintiff is forever barred from the equitable remedy of foreclosure and thus in violation of the laws of equity and thus Exhibits B, C and D should be set aside and vacated.

4. That the court should further declare that because the Defendant is forever barred from the equitable remedy of foreclosure, and the notes and mortgages are void ab initio, unenforceable, and title is quieted in favor of Plaintiff and against the rest of the world to the property described as follows:

Title Number:  03-4705

ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn County of Kings City and State of New York known and designated on a certain map entitled "Map of the farm of Leah Morris in the 8th Ward of the City of Brooklyn which was authorized to be sold by an Act of Legislature of the State of New York passed March 25, 1866 entitled "an Act in relation to Lands devised by Simon Bergen deceased made for the Trustee under the Will of Bergen Complied from surveys made by Inis G. Bergen C.S., and filed in the Office of the Register of the County of Kings as Map number 756 on May 10, 1867 as by a lot number 738 and which said lot is bounded and described as follows;

BEGINNING at a point on the Southwesterly side of 39th Street distant 175 feet northwesterly from the corner formed by the intersection of the Southwesterly side of 39th Street with the northwesterly side of 8th Avenue;

RUNNING THENCE Southwesterly parallel with 8th Avenue and part of the distance through a party wall 100 feet 2 inches;

THENCE northwesterly with 39th Street 25 feet;

THENCE Northwesterly parallel with 8th Avenue 100 feet 2 inches to the Southwesterly side of 39th Street;

THENCE Southeasterly along the Southwesterly side of 39th Street 25 feet to the point or place of BEGINNING.

5. Grant the Plaintiffs their costs according to a costs bill;

6. Grant the Plaintiffs their attorney's fees pursuant to a costs bill;

7. Such other and further relief as the court deems just and adequate.

Respectfully Submitted,                    _____ ___, 2014

## VERIFICATION

I declare under penalty of perjury that we have read the foregoing, and it is true and correct, except as to those matters which are based on information and belief, and as to those matters, I believe them to be true; and I executed this Verification on February 24, 2014.

Respectfully Submitted,

*Nicola Nucci*

NICOLA NUCCI
762 39th Street
Brooklyn, NY 11232

*Paquita Beltre*

Notary Public, State of New York
No. 24-4980613
Qualified in Kings County
Commission Expires April 22, 2015

<u>SPACE RESERVED FOR RECORDING INFORMATION</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

```
———————————————————————x
                                        }
NICOLA NUCCI,                           }      Index No.
        Plaintiff,                      }
                                        }
                                        }
    -  Against -                        }      LIS PENDENS
                                        }
PHH MORTGAGE CORPORATION}
COMMERCE BANK, N.A.                     }
        Defendant.                      }
———————————————————————  }
```

TO THE ABOVE NAMED DEFENDANT(S) AND ALL OTHERS WHOM IT MAY CONCERN:

YOU ARE HEREBY NOTIFIED that suit was instituted by the above-named Plaintiff against the above-named Defendant(s), in the above-styled cause, involving the following described property, situated, lying and being in Kings County, New York, to-wit:

Title Number:  03-4705

ALL that certain plot place or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn County of Kings City and State of New York known and designated on a certain map entitled "Map of the farm of Leah Morris in the 8th Ward of the City of Brooklyn which was authorized to be sold by an Act of Legislature of the State of New York passed March 26, 1866 entitled "an Act in relation to Lands devised by Simon Bergen deceased made for the Trustee under the Will of Bergen Complied from surveys made by Inis G. Bergen C.S., and filed in the Office of the Register of the County of Kings as Map number 756 on May 10, 1867 as by a lot number 738 and which said lot is bounded and described as follows;

BEGINNING at a point on the Southwesterly side of 39th Street distant 175 feet northwesterly from the corner formed by the intersection of the Southwesterly side of 39th Street with the northwesterly side of 8th Avenue;

RUNNING THENCE Southwesterly parallel with 8th Avenue and part of the distance through a party wall 100 feet 2 inches;

THENCE northwesterly with 39th Street 25 feet;

THENCE Northwesterly parallel with 8th Avenue 100 feet 2 inches to the Southwesterly side of 39th Street;

THENCE Southeasterly along the Southwesterly side of 39th Street 25 feet to the point or place of BEGINNING.


     Relief sought as to such property is for quiet title against the mortgages and fraudulent assignments which are set forth and attached to the complaint, and recorded in the Official Records:

1. 2006010800104003
2. 2008052900100002
3. 2008052900100001


     YOU will, therefore, please govern yourselves accordingly.

     Respectfully Submitted,

*Nicola Nucci*

NICOLA NUCCI
762 39th Street
Brooklyn, NY 11232

## VERIFICATION

We declare under penalty of perjury that we have read the foregoing, and it is true and correct, except as to those matters which are based on information and belief, and as to those matters, I believe them to be true; and I executed this Verification on January ___, 2014.

Respectfully Submitted,

_Nicola Nucci_

NICOLA NUCCI
762 39th Street
Brooklyn, NY 11232

Subscribed and affirmed, or sworn to before me   Subscribed and affirmed, or sworn to before me

in the County of _____KINGS_____,

State of ____NY_____, this _24_

day of __FEBRUARY__, 20 _14_   April 22, 2015

My Commission Expires: _____

_____
Notary Public/Clerk

*Paquita Beltre*
*Notary Public, State of New York*
*No. 24-4980613*
*Qualified in Kings County*
*Commission Expires April 22, 2015*

14 | P a g e

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

——————————————————— x
                                              }
NICOLA NUCCI,                                 }        Index No.
       Plaintiff,                             }
                                              }
   -   Against -                              }        **EXHIBITS IN SUPPORT OF COMPLAINT**
                                              }
PHH MORTGAGE CORPORATION}
COMMERCE BANK, N.A.                           }
       Defendant.                             }
——————————————————————        }

EXHIBIT A

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2005110400653001002ECCC4

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2005110400653001 | Document Date: 11-02-2005 | Preparation Date: 12-06-2005 |

Document Type: DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| SELECT LAND SERVICES, LLC | SELECT LAND SERVICES, LLC |
| 5422 16TH AVENUE | 5422 16TH AVENUE |
| RECORDING | RECORDING |
| BROOKLYN, NY 11204 | BROOKLYN, NY 11204 |
| 718-435-0808 | 718-435-0808 |

### PROPERTY DATA

| Borough | Block Lot | | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 915  27 | Entire Lot | | 762 39 STREET |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or  Document ID._____ or _____ Year____ Reel ____ Page ____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| ELIAS FALERO | NICOLA NUCCI |
| 762 39TH STREET | 762 39TH STREET |
| BROOKLYN, NY 11232 | BROOKLYN, NY 11232 |

### FEES AND TAXES

| | | | |
|---|---|---|---|
| Mortgage | | Recording Fee: $ | 52.00 |
| Mortgage Amount: | $          0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $          0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | $ | 75.00 |
| TAXES: County (Basic): | $          0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $          0.00 | $ | 232.00 |
| Spec (Additional): | $          0.00 | | |
| TASF: | $          0.00 | |
| MTA: | $          0.00 | |
| NYCTA: | $          0.00 | |
| Additional MRT: | $          0.00 | |
| TOTAL: | $          0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed        12-19-2005 11:49
City Register File No.(CRFN):
2005000696547

NYC HPD Affidavit in Lieu of Registration Statement

*City Register Official Signature*

— Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS INDENTURE, made the    2nd         day of November   , in the year  2005

BETWEEN
ELIAS FALERO OF 762 39ᵀᴴ STREET, BROOKLYN, NEW YORK 11232

party of the first part, and

NICOLA NUCCI OF 762 39ᵀᴴ STREET, BROOKLYN, NEW YORK 11232

party of the second part,
WITNESSETH, that the party of the first part, in consideration of
TEN------------------------------------------------------------dollars
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

### SEE SCHEDULE "A" ANNEXED AND MADE A PART HEREOF.

SAID PREMISES MORE COMMONLY KNOWN AS 762 39ᵀᴴ STREET, BROOKLYN, NEW YORK

Kings county  Block 915  Lot 27

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this Indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

ELIAS FALERO

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of  Kings  , ss:

On the  2nd  day of  November  in the year  2005,
before me, the undersigned, personally appeared
ELIAS FALERO

, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within Instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s),
or the person upon behalf of which the individual(s) acted, executed
the instrument.

DWIGHT M. GONZALEZ
NOTARY PUBLIC - STATE OF NEW YORK
NO. 0GO5050601
QUALIFIED IN KINGS COUNTY
My Commission Expires
January 28, 2008

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS
TAKEN IN NEW YORK STATE

State of New York, County of  , ss:
On the  day of  in the year
before me, the undersigned, a Notary Public in and for said State,
personally appeared
, the
subscribing witness to the foregoing instrument, with whom I am
personally acquainted, who, being by me duly sworn, did depose and
say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof),
that he/she/they know(s)

to be the individual described in and who executed the foregoing
instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed
his/her/their name(s) as a witness thereto

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of  , ss:

On the  day of  in the year
before me, the undersigned, personally appeared

, personally known to me or proved to me on the
basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me
that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s),
or the person upon behalf of which the individual(s) acted, executed
the instrument

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK
STATE

*State of  , County of  , ss:
*(Or Insert District of Columbia, Territory, Possession or Foreign
County)

On the  day of  in the year
, before me the undersigned  personally appeared

Personally known to me or proved to me on the basis of satisfactory
evidence to be the individual(s) whose name(s) is (are) subscribed to
the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their capacity(ies), that by his/her/their
signature(s) on the instrument, the individual(s) or the person upon
behalf of which the individual(s) acted, executed the instrument, and
that such individual made such appearance before the undersigned in
the

(add the city or political subdivision and the state or country or other
place the acknowledgement was taken).

## Bargain and Sale Deed with covenant against Grantors Acts

SECTION
BLOCK  913
LOT  37
COUNTY OR TOWN  KINGS

Title No.

TO

DISTRIBUTED BY

MacGregor Abstract Corporation
516-836-5222 Fax: 516-836-8223
866-820-1700 Fax: 866-820-1900



RETURN BY MAIL TO:

Nicola Nucci
782 39th Street
Brooklyn, New York 11232

**RICHMOND ABSTRACT CORP.**
as Agent for
STEWART TITLE INSURANCE COMPANY

SCHEDULE A (Description)

Title Number:  03-4705

ALL that certain plot piece or parcel of land with the buildings and improvements thereon erected situate lying and being in the Borough of Brooklyn County of Kings City and State of New York known and designated on a certain map entitled "Map of the farm of Leah Morris in the 8th Ward of the City of Brooklyn which was authorized to be sold by an Act of Legislature of the State of New York passed March 26, 1866 entitled "an Act in relation to Lands devised by Simon Bergen deceased made for the Trustee under the Will of Bergen Complied from surveys made by Inis G. Bergen C.S., and filed in the Office of the Register of the County of Kings as Map number 756 on May 10, 1867 as by a lot number 738 and which said lot is bounded and described as follows;

BEGINNING at a point on the Southwesterly side of 39th Street distant 175 feet northwesterly from the corner formed by the intersection of the Southwesterly side of 39th Street with the northwesterly side of 8th Avenue;

RUNNING THENCE Southwesterly parallel with 8th Avenue and part of the distance through a party wall 100 feet 2 inches;

THENCE northwesterly with 39th Street 25 feet;

THENCE Northwesterly parallel with 8th Avenue 100 feet 2 inches to the Southwesterly side of 39th Street;

THENCE Southeasterly along the Southwesterly side of 39th Street 25 feet to the point or place of BEGINNING.

Schedule A Page 2 of 2

EXHIBIT B

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006010800104003001E3C52

**PAGE 1 OF 31**

## RECORDING AND ENDORSEMENT COVER PAGE

Document Date: 12-20-2005     Preparation Date: 01-08-2006

Document ID: 2006010800104003
Document Type: AGREEMENT
Document Page Count: 29

**PRESENTER:**
SELECT LAND SERVICES, LLC
5422 16TH AVENUE
RECORDING
BROOKLYN, NY 11204
718-435-0808
skupfer@usa.net

**RETURN TO:**
PHH MORTGAGE CORP,
3910 KIRBY DRIVE, SUITE 300
HOUSTON, TX 77098

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 915 | 27 | Entire Lot | 762 39 STREET |

Property Type: DWELLING ONLY - 4 FAMILY

### CROSS REFERENCE DATA

CRFN: 2004000462116
  x  Additional Cross References on Continuation Page

### PARTIES

**PARTY 1:**
NICOLA NUCCI
762 39TH STREET
BROOKLYN, NY 11232

**PARTY 2:**
MERS
P.O. BOX 2026
FLINT, MI 48501

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 182.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 413,352.80 | Affidavit Fee: $ | 8.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | 255 | | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    02-10-2006 10:29
City Register File No.(CRFN):
2006000080744

*Annette M. Hill*
**City Register Official Signature**

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



2006010800104003001C3ED2

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 31 |
|---|---|---|
| Document ID: 2006010800104003 | Document Date: 12-20-2005 | Preparation Date: 01-08-2006 |
| Document Type: AGREEMENT | | |

CROSS REFERENCE DATA
Document ID: 2006010800104001
Document ID: 2006010800104002

Return To:

PHH Mortgage Corporation
3910 Kirby Drive , Suite #300,
HOUSTON, TX 77098

*Said premises is improved by a 4 family dwelling*

Prepared By:
Josh Singletary, 3000
Leadenhall Road Mount Laurel,
NJ 08054

*Kings county   Block: 915 Lot: 37*
———————————— [Space Above This Line For Recording Data] ————————————

## CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT
MIN 100020000327993485

**WORDS USED OFTEN IN THIS DOCUMENT**

(A) "Agreement." This document, which is dated December 20, 2005        and exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower," Nicola Nucci, AN UNMARRIED MAN,

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 762 39  ST, BROOKLYN, NY  11232

(C) "Lender." PHH Mortgage Corporation

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of New Jersey                                              . Lender's address is 3000 Leadenhall Road Mount Laurel, NJ 08054

(D) "Mortgages." The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS        Form 3172 1/01
- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                              (rev. 5/01)
                                                                                                        Amended 11/02

 -850A(NY) (0305)
Page 1 of 7                         Initials: _____
VMP Mortgage Solutions (800)521-7291

(F)  "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G)  "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H)  "Property." The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

762  39TH STREET

[Street]

BROOKLYN                                          KINGS

[City]                                            [County]

NY  11232

[State and Zip Code]

I promise and I agree with Lender as follows:

## I.  BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 413,352.00                        of this amount, U.S. $15,278.17                        was advanced to me (or for my account) immediately prior to this consolidation.

## II.  AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A)  By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B)  In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

## III.  AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

**IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE**

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

**V. NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI. BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII. WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX. LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X. TYPE OF PROPERTY**

Check box(es) as applicable.

[x] This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

[ ] This Agreement does not cover real property improved as described above.

Initials: _____

820A(NY) (0305)          Page 3 of 7          Form 3172  1/01 (rev. 6/01)

By signing this Agreement, Lender and I agree to all of the above.

MHL Mortgage Corporation                                    Nicole Nucci
                                              - Lender      Nicole Nucci                        - Borrower
By: _____
        Asst. Secretary Amanda Esposito, Asst.V.P.
Mortgage Electronic Registration Systems, Inc.
                                              - Mortgagee
By: _____                  _____        _____
        Jeffrey Manfredia                                  - Borrower

Amanda Esposito, Asst.V.P.


_____          _____          _____
                             - Borrower                    - Borrower


              _____          _____
              - Borrower                   - Borrower


              _____          _____
              - Borrower                   - Borrower


-850ANY( /12m)              Page 6 of 7              Form 3122  1/01 (rev. 5/01)

STATE OF NEW YORK, KINGS                                County ss:

On the 20th        day of December,  2005        before me, the undersigned, a notary
public in and for said state, personally appeared

*Nicola Varca*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

MICHELA G. PARADISO
Notary Public, State of New York
No. 43827299G
Qualified in Kings and County
Commission Expires
10-31-20___                        Notary Public

~~Jersey~~
STATE OF NEW ~~YORK~~, BURLINGTON                      County ss:

On the  23th day of  December, 2005  before me, the undersigned, a notary
public in and for said state, personally appeared

*Amanda Esposito*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Theresa Alibrando
Notary Public State of New Jersey
My Commission Expires 03/22/09

SEAL

Tax Map Information:

850A(NY) (0306)                    Page 5 of 7              Form 3172  1/01 (rev. 5/01)

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

☐ (1) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and
☐ will be recorded together with this Agreement.
☐ was recorded on                              , in the                                        of
                                               , State of New York, at
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $
This Mortgage secures a Note dated
☐ This Mortgage was assigned to
                                                          by Assignment of Mortgage dated

☐ and recorded on                              in the
of                                             , State of New York, at
☐ (2) This Mortgage given by

and dated                                        in favor of

securing the original principal amount of U.S. $
This Mortgage was recorded on                  , in the
of                                             , State of New York, at
☐ At  this  date,  the  unpaid  principal  balance  secured  by  this  Mortgage  is  U.S.
$                          . This Mortgage secures a Note dated
☐ This Mortgage was assigned to
                                                          by Assignment of Mortgage dated

☐ and recorded on                              in the
of                                             , State of New York, at

Initial: _____

-850A(NY) (0308)                 Page 6 of 7             Form 3172  1/01 (rev. 6/01)

**EXHIBIT A**
**(List of Mortgages, Notes, and Agreements)**

(1) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 9/12/2003, recorded 07/27/2004 in the office of the Kings County Clerk's Office at CRFN # 2004000462116. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $8,343.66

(2) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 09/12/2003, recorded 3/23/2004 in the King's County Clerks Office at CRFN # 2004000176817. NOTE: Mortgage (2) is a correction Mortgage.
At this date, the unpaid principal balance is $398,074.63.

(3) A Mortgage made by Nicola Nucci to PHH MORTGAGE CORP. in the sum of $15,278.17 dated 12/20/2005 to be recorded in the Kings County Clerk's Office. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $351.00

The Mortgages in (1), 2) & (3) are being Consolidated, Extended and Modified to form a single lien of $413,352.80 by Agreement between Nicola Nucci and PHH MORTGAGE CORP. dated 12/20/2005 to be recorded in the Kings County Clerk's Office.

Exhibit B
## SCHEDULE A

### Legal Description

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, known and designated on a certain map entitled "Map of the farm of Leah Morris in the 8th Ward of the City of Brooklyn which was authorized to be sold by an Act of Legislature of the State of New York passed March 26, 1866 entitled "an Act in relation to Lands devised by Simon Bergen deceased made for the Trustee under Will of Bergen Compiled from surveys made by Inis G. Bergen C.S., and filed in the Office of the Register of the County of Kings as map number 756 on May 10, 1867 as by lot number 738 and which said lot is bounded and described as follows:

BEGINNING at a point on the Southwesterly side of 39th Street distant 175 feet northwesterly from the corner formed by the intersection of the Southwesterly side of 39th Street with the northwesterly side of 8th Avenue;

RUNNING THENCE Southwesterly parallel with 8th Avenue and part of the distance through a party wall 100 feet 2 inches;

THENCE northwesterly parallel with 39th Street 25 feet;

THENCE Northwesterly parallel with 8th Avenue 100 feet 2 inches to the Southwesterly side of 39th Street;

THENCE Southeasterly along the Southwesterly side of 39th Street, 25 feet to the point or place of BEGINNING.

## Exhibit C

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

## NOTE

**December 20, 2005**                    **BROOKLYN**                    **New York**
[Date]                                   [City]                          [State]

**762 39TH STREET BROOKLYN, NY 11232**

[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 413,352.80     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **PHH Mortgage Corp (fka Cendant Mortgage Corp)**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay my interest at a yearly rate of **5.625** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.   PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **01st**        day of each month beginning on **February 1st, 2006.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 1st, 2036**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3000 Leadenhall Road Mount Laurel, NJ 08054**

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,379.50

### 4.   BORROWER'S RIGHTS TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

5N(NY).C (041201)

Page 1 of 3            Initials: _____

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **2.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-6N(NY) (0005)                                    Page 2 of 3                                    Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
Nicola Nucci                    -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                -Borrower                                      -Borrower

[Sign Original Only]

-5N(NV) (0008)                          Page 3 of 3                          Form 3233 1/01

Return To: PHH Mortgage
Corporation
3910 Kirby Drive ,
Suite #300, HOUSTON, TX
77098
Prepared By:
Josh Singletary, 3000
Leadenhall Road Mount
Laurel, NJ 08054

-----------------------------[Space Above This Line For Recording Data]-----------------------------

# MORGAGE MIN 100020000327993485

### EXHIBIT D CONSOLIDATED

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated December 20, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Nicola Nucci, AN UNMARRIED MAN

whose address is 762 39TH STREET BROOKLYN, NY 11232

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." PHH Mortgage Corp (fka Cendant Mortgage Corp)

will be called "Lender." Lender is a corporation or association which exists under the laws of
New Jersey                    . Lender's address is 3000 Leadenhall Road
Mount Laurel, NJ 08054

The Premises are improved by a One or Two Family Dwelling

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

-6A(NY) (0405)06
Page 1 of 17                    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

(D) "Note." The note signed by Borrower and dated **December 20, 2005**, will be called the "Note." The Note shows that I owe Lender **Four Hundred Thirteen Thousand Three Hundred Fifty-Two Dollars and Eighty Cents**

Dollars (U.S. $ **413,352.80**) plus interest and other amounts that may be payable. I have promised to pay this debt in the Periodic Payments and to pay the debt in full by

(E) "Property." The property that is described below in the section titled "Description of Property," will be called the "Property."

(F) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(H) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower (check box as applicable):

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances and administrating rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

(J) "Community Association Dues, Fees, and Assessments." All dues, fees assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(K) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transactions.

(L) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(M) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award or damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(N) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment." The regularly scheduled amount due for (i) Principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(P) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initial: _____

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 762   39TH STREET

                                                                                              [Street]
BROOKLYN                         [City, Town or Village], New York 11232   [Zip Code].
This Property is in KINGS                                      County. It has the following legal
description: **Being more particularly described by a legal description
attached hereto and made a part thereof. Being the same premises
conveyed to _____ by deed dated
_____ and recorded in the _____ county
recorder's office in deed book _____ page _____. This
is a first and paramount mortgage lien on the above described premises.**

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

-6A(NY) (0005).06                          Page 3 of 17          Initials: _____          Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on such unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

-6A(NY) (0005)(6)                    Page 6 of 17                    Initials _____                    Form 3033 1/01

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (c) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

**43 | Page**

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include the corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

_____ -6A(NY) (0005).04                     Page 12 of 17                 Initials _____      Form 3033 1/01

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☒ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                          Nicola Nucci                -Borrower

_____          _____(Seal)
                                                                      -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                     -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                     -Borrower

_____(Seal)    _____(Seal)
                        -Borrower                                     -Borrower

STATE OF NEW YORK, KINGS                                   County ss:

On the 20th          day of December, 2005                before me, the undersigned, a notary
public in and for said state, personally appeared Nicola Nucci

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:

-6A(NY) (0005).06                    Page 17 of 17           Initials: _____        Form 3033 1/01

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

**2006010800104003001SF2D3**

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2006010800104003   Document Date: 12-20-2005   Preparation Date: 01-08-2006
Document Type: AGREEMENT

SUPPORTING DOCUMENTS SUBMITTED:

255 MORTGAGE TAX EXEMPT AFFIDAVIT

Page Count
4

## AFFIDAVIT UNDER SECTION 255 OF THE TAX LAW

Michela G. Paradiso, being duly sworn, deposes and says:

1. She is the authorized counsel for PHH Mortgage Corp. hereinafter described mortgage and is familiar with the facts and circumstances set forth herein.

2. The Consolidation, Extension & Modification Agreement, herewith offered for recording, is supplemental to the mortgage(s) set forth on the annexed Exhibit A upon which the full mortgage tax was originally paid.

3. This Consolidation Extension & Modification Agreement, now being offered for recording, does not create any new lien or indebtedness.

4. Exemption from payment of mortgage tax, as to the recording of this Consolidation, Extension & Modification Agreement, is hereby claimed under Section 255 of the Tax Law.

Michela G. Paradiso, Esq.

Sworn to before me this
20th day of December, 2005

Notary Public

ESTHER C. HIRSCH
NOTARY PUBLIC, State of New York
No. 01HI5083199
Qualified in Kings County
Commission Expires August 11, 20__ 09

SEAL

## *EXHIBIT A*
### (List of Mortgages, Notes, and Agreements)

(1) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 9/12/2003, recorded 07/27/2004 in the office of the Kings County Clerk's Office at CRFN # 2004000462116. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $8,343.66

(2) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 09/12/2003, recorded 3/23/2004 in the King's County Clerks Office at CRFN # 2004000176817.
NOTE: Mortgage (2) is a correction Mortgage.
*this is currently in the reduced balance of $398.074.63*

(3) A Mortgage made by Nicola Nucci to PHH MORTGAGE CORP. in the sum of $15,278.17 dated 12/20/2005 to be recorded in the Kings County Clerk's Office. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $~~365.00~~ *313.65*

The Mortgages in (1), 2) & (3) are being Consolidated, Extended and Modified to form a single lien of $413,352.80 by Agreement between Nicola Nucci and PHH MORTGAGE CORP. dated 12/20/2005 to be recorded in the Kings County Clerk's Office.

## AFFIDAVIT UNDER SECTION 255 OF THE TAX LAW

Michela G. Paradiso, being duly sworn, deposes and says:

1. She is the authorized counsel for PHH Mortgage Corp. hereinafter described mortgage and is familiar with the facts and circumstances set forth herein.

2. The Consolidation, Extension & Modification Agreement, herewith offered for recording, is supplemental to the mortgage(s) set forth on the annexed Exhibit A upon which the full mortgage tax was originally paid.

3. This Consolidation Extension & Modification Agreement, now being offered for recording, does not create any new lien or indebtedness.

4. Exemption from payment of mortgage tax, as to the recording of this Consolidation, Extension & Modification Agreement, is hereby claimed under Section 255 of the Tax Law.

Michela G. Paradiso, Esq.

Sworn to before me this
20th day of December, 2005

Notary Public

ESTHER O. HIRSCH
NOTARY PUBLIC, State of New York
No. 01HI5083199
Qualified in Kings County
Commission Expires August 11, 20 09

SEAL

## _EXHIBIT A_
### (List of Mortgages, Notes, and Agreements)

(1) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 9/12/2003, recorded 07/27/2004 in the office of the Kings County Clerk's Office at CRFN # 2004000462116. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $8,343.66

(2) A Mortgage made by Nicola Nucci and Elias Falero to MERS as nominee for Fleet National Bank in the sum of $418,433.00 dated 09/12/2003, recorded 3/23/2004 in the King's County Clerks Office at CRFN # 2004000176817. NOTE: Mortgage (2) is a correction Mortgage.

*ptg is currently in the actual balance of $398,074.63*

(3) A Mortgage made by Nicola Nucci to PHH MORTGAGE CORP. in the sum of $15,278.17 dated 12/20/2005 to be recorded in the Kings County Clerk's Office. This mortgage secures a note dated the same.

MORTGAGE TAX PAID: $35,~~430~~ *313.65*

The Mortgages in (1), 2) & (3) are being Consolidated, Extended and Modified to form a single lien of $413,352.80 by Agreement between Nicola Nucci and PHH MORTGAGE CORP. dated 12/20/2005 to be recorded in the Kings County Clerk's Office.

EXHIBIT C

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008052900100001001E2C4B

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 7 |
|---|---|---|
| Document ID: 2008052900100001 | Document Date: 05-12-2008 | Preparation Date: 05-29-2008 |

Document Type: MORTGAGE
Document Page Count: 6

| PRESENTER: | RETURN TO: |
|---|---|
| SARAH PAUL<br>W140 N8917 LILY RD.<br>MENOMONEE FALLS, WI 53051<br>262-509-5625<br>spaul@group9.net | RECORDING DEPARTMENT<br>444 OXFORD VALLEY ROAD<br>SUITE #300<br>LANGHORNE, PA 19047 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| BROOKLYN | 915 | 27 | Entire Lot | | 762 39TH STREET |

Property Type: DWELLING ONLY - 4 FAMILY

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year____ Reel____ Page____ or File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| NICOLA NUCCI<br>762 39TH STREET<br>BROOKLYN, NY 11232 | COMMERCE BANK<br>2059 SPRINGDALE ROAD<br>CHERRY HILL, NJ 08003 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 200,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 200,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 1,000.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 2,000.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 500.00 | | | |
| MTA: | $ | 600.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 4,100.00 | | | |
| Recording Fee: | $ | 67.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    06-03-2008 11:26
City Register File No.(CRFN):
2008000222560

*Annette M. Hill*

**City Register Official Signature**

WHEN RECORDED MAIL TO:
Commerce Bank, N.A., Attn: File Management
~02469-01-53~
2055 Springdale Road
Cherry Hill, NJ 08003

Record and Return to:
Group9, Inc.
444 Oxford Valley Rd
Langhorne, PA 19047

FOR RECORDER'S USE ONLY

885147298

## MORTGAGE

DEFINITIONS. The following words are used often in this document. When they are used, they will have the following meanings:

Borrower. Nicola Nucci and all other persons and entities signing the Credit Agreement will sometimes be called "Borrower".

Credit Agreement. The words "Credit Agreement" mean the credit agreement signed by Borrower and dated May 12, 2008 with a credit limit of $200,000.00. The words "Credit Agreement" include all renewals of, extensions of, modifications of, and substitutions for the credit agreement. Specifically, without limitation, this Security Instrument secures a revolving line of credit, which obligates Lender to make advances to Borrower so long as Borrower complies with all the terms of the Credit Agreement. NOTICE TO OWNER: THE CREDIT AGREEMENT CONTAINS A VARIABLE INTEREST RATE.

Existing Indebtedness. The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Security Instrument.

Lender. Commerce Bank, N.A., will be called "Lender."

Mortgage. This Mortgage between Owner and Lender will be called the "Mortgage".

Owner. Nicola Nucci sometimes below will be called "Owner" and sometimes simply "I" or "me."

Property. The property that is described in the section titled "DESCRIPTION OF THE PROPERTY" will be called the "Property".

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Sums Secured will be called "Related Documents".

Security Instrument. This mortgage document will also be called the "Security Instrument."

Sums Secured. The amounts described below in the section titled "OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY" sometimes will be called the "Sums Secured." The lien of this Security Instrument will not exceed at any one time $200,000.00.

The Property covered by this Mortgage is improved by a 1 or 2 family residence only.

NOTICE: THIS SECURITY INSTRUMENT SECURES AN AGREEMENT WHICH CONTAINS A PROVISION ALLOWING FOR CHANGES IN THE INTEREST RATE. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

THIS SECURITY INSTRUMENT IS A CREDIT LINE MORTGAGE AS DEFINED IN SECTION 281 OF THE NEW YORK REAL PROPERTY LAW. IT SECURES AN INDEBTEDNESS UNDER THE DEFINITION OF CREDIT AGREEMENT, LOCATED IN THE DEFINITIONS SECTION, WHICH REFLECTS THE FACT THAT THE PARTIES REASONABLY CONTEMPLATE ENTERING INTO A SERIES OF ADVANCES OR ADVANCES, PAYMENTS, AND READVANCES. THE CREDIT AGREEMENT LIMITS THE AGGREGATE AMOUNT AT ANY TIME OUTSTANDING TO THE MAXIMUM AMOUNT SET FORTH ABOVE IN THE DEFINITION OF CREDIT AGREEMENT.

THIS MORTGAGE IS DATED May 12, 2008, BETWEEN Nicola Nucci, whose address is 762 39th Street, Brooklyn, NY 11232 (sometimes below will be called "Owner", "Borrower," "I," or "me"); and Commerce Bank, N.A., whose address is Manhattan Eastside Region, 317 Madison Avenue, 2nd Floor, New York, NY 10017 (sometimes below will be called "Lender"),

OWNER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY. I mortgage, grant and convey to Lender the Property, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants". I am giving Lender those rights to protect Lender from possible losses that might result if I fail to do any of the following:

(A) Pay all the amounts that I owe Lender as stated in the Credit Agreement;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument.

DESCRIPTION OF THE PROPERTY. I mortgage, grant and convey to Lender the Property described in (A) through (I) below.

(A) This Property is located in Kings County, State of New York:

see attached schedule "A"  Block 915, Lot 27

# MORTGAGE
## (Continued)

**The Real Property or its address is commonly known as 762 39th Street, Brooklyn, NY 11232.**

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements, rights and appurtenances attached to the Property;"

(D) All rents and royalties from the Property described in subparagraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and stock that are part of the Property described in subparagraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(H) All of the rights and property described in subparagraphs (B) through (G) of this section that I acquire in the future; and

(I) All replacements of or additions to the Property described in subparagraphs (B) through (I) of this section.

**OWNER'S RIGHT TO MORTGAGE THE PROPERTY AND OWNER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY.** I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**THIS MORTGAGE IS GIVEN TO SECURE (A) PAYMENT OF THE SUMS SECURED AND (B) PERFORMANCE OF ALL OF MY OBLIGATIONS UNDER THIS MORTGAGE. I PROMISE AND I AGREE WITH LENDER AS FOLLOWS:**

**OWNER'S PROMISE TO PAY.** I will pay to Lender on time principal and interest due under the Credit Agreement and any late charges due under the Credit Agreement.

**OWNER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS.** I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will do this by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against the Property because an obligation has not been fulfilled is known as a "lien." I must promptly pay or satisfy a superior lien unless: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will then pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Security Instrument

Existing Lien. The lien of this Security Instrument securing the Sums Secured may be secondary and inferior to an existing lien. I expressly covenant and agree to pay, or see to the payment of, the Existing Indebtedness and to prevent any default under the Existing Indebtedness. I understand that in the event of a default on the Existing Indebtedness, Lender has the right to pay over money to cure the default. Lender will then be entitled to add any sums which it pays to the amount owing on the Credit Agreement. Those sums which the Lender pays will be entitled to interest at the same rate of interest as the other Sums Secured as defined above. Further the Lender has the right to demand immediate repayment of those sums advanced on the existing indebtedness.

No Modification. I shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Security Instrument by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. I shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**OWNER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE.** I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. If the Property is or becomes located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, I agree to obtain and maintain Federal Flood Insurance for the maximum amount of my credit line and the full unpaid principal balance of any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender. I agree to maintain such insurance for the term of the loan. NOTICE: In no event, however, pursuant to Section 38.9 of the New York Banking Board Regulations, will I be required to provide hazard insurance in excess of the replacement value of the buildings and other improvements on the Property. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that is owed to Lender under the Credit Agreement and under this Security Instrument. If any of the proceeds remain after the amount that is owed to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement. However, I and Lender may agree in writing to those delays or changes.

If Lender acquires the Property as provided below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**MORTGAGE**
(Continued)

Loan No: 885147298                                                                                      Page 3

===============================================================================

**OWNER'S OBLIGATION TO MAINTAIN THE PROPERTY.** I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate.

**LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY; MORTGAGE INSURANCE.** If I fail to comply with any provision of this Security Instrument, including any obligation to maintain existing indebtedness in good standing, or if any action or proceeding is commenced that would materially affect Lender's interests in the Property, Lender on my behalf may, but will not be required to, take any action that Lender thinks to be appropriate. Any amount that Lender spends or incurs in so doing will bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of my repayment. All such payments, at Lender's option, will (A) be payable on demand, or (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due either during the term of any applicable insurance policy or during the remaining term of the Credit Agreement, or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. This Security Instrument also will secure payment of these amounts. The rights provided for in this paragraph will be in addition to any other rights or any remedies to which Lender may be entitled on account of the default. Any action taken by Lender under this paragraph will not constitute a cure of any default so as to bar Lender from any remedy that it otherwise would have had under this Security Instrument.

If Lender required mortgage insurance as a condition for my loan, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**POSSESSION AND USE.** Until in default, I may remain in possession and control of and manage the Property.

**LENDER'S RIGHT TO INSPECT THE PROPERTY.** Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before, or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY.** A taking of any governmental authority by eminent domain is known as "condemnation." I give to Lender my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within thirty (30) days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which is owed to Lender under the Credit Agreement, that use will not delay the due date or change the amount of any of the monthly payments under the Credit Agreement. However, Lender and I may agree in writing to those delays or changes.

**CONTINUATION OF OWNER'S OBLIGATIONS AND OF LENDER'S RIGHTS.**

Owner's Obligations. Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Credit Agreement or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Credit Agreement and under this Security Instrument.

Lender may allow delays or changes for a person who takes over my rights and obligations, even if Lender is not requested to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Credit Agreement or under this Security Instrument, even if Lender is requested to do so.

Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right to demand immediate payment in full of the amounts that are owed to Lender under the Credit Agreement and under this Security Instrument.

**OWNER'S OBLIGATIONS AND THOSE OF PERSONS TAKING OVER OWNER'S OBLIGATIONS.** Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Owner, each of us is fully obligated to keep all of Owner's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together.

**LOAN CHARGES.** If the Credit Agreement secured by this Security Instrument is subject to a law which sets maximum Credit Agreement charges, and that law is finally interpreted so that the interest or other Credit Agreement charges collected or to be collected in connection with the Credit Agreement exceed permitted limits: (A) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Credit Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Credit Agreement.

**LEGISLATION AFFECTING LENDER'S RIGHTS.** If a change in applicable law would make any provision of the Credit Agreement or this Security Instrument unenforceable, Lender may require immediate payment in full of all Sums Secured by this Security Instrument as that phrase is defined above. If Lender requires immediate payment in full under this Paragraph, Lender will take the steps and may act as specified below.

**NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT.** Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class, certified or registered mail unless applicable law requires use of another method. The notice will be addressed to me at the address shown at the beginning of this Security Instrument. A notice will be given to me at a different address if I give Lender notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to the Lender's address shown at the beginning of this Security Instrument. A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph or of applicable law.

**LAW THAT GOVERNS THIS SECURITY INSTRUMENT.** This Security Instrument will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of laws provisions. This Security Instrument has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to appear in the courts of New York County, State of New York.

**OWNER'S COPY.** I will be given one conformed copy of the Credit Agreement and of this Security Instrument.

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED.** Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Owner is sold or transferred and Owner is not a natural person. However, Lender will not require immediate payment in full if this is prohibited by federal law as of the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph, Lender will give me a notice which states this requirement. The notice

## MORTGAGE
(Continued)

Loan No: 885147298                                                                 Page 4

---

will give me at least thirty (30) days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**DEFAULT.** At Lender's option, I will be in default under this Security Instrument if any of the following happen: (A) I commit fraud or make a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about my income, assets, liabilities, or any other aspects of my financial condition. (B) I do not meet the repayment terms of the Credit Agreement. (C) My action or inaction adversely affects the collateral for the Credit line account or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the Property, failure to pay taxes, death of all persons liable on the credit line account, transfer of title or sale of the dwelling, creation of a lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**LENDER'S RIGHTS UPON DEFAULT.** If I am in default under this Security Instrument, this is what Lender may do, in addition to any other rights or remedies provided by law:

**Accelerate Payment.** Lender shall have the right at its option without notice to me to require that I pay immediately the entire amount then remaining unpaid under the Credit Agreement and under this Security Instrument, including any prepayment penalty which I would be required to pay.

**Lender's Rights to Rental Payments and to Take Possession of the Property.** If Lender requires immediate payment in full, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (1) collect the rental payments, including overdue rental payments, directly from the tenants; (2) enter on and take possession of the Property; (3) manage the Property; and (4) sign, cancel and change leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph, I agree that the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Security Instrument. All rental payments collected by Lender or by a receiver, other than any rent paid by me, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing my interest in all or any part of the Property.

**My Payment of Rent.** If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Sums Secured after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of my obligations under this Security Instrument, after my failure to do so, that decision by Lender will not affect Lender's right to declare me in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Security Instrument, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Sums Secured. Expenses covered by this paragraph include, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law.

**LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT.** When Lender has been paid all amounts due under the Credit Agreement and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

**AGREEMENTS ABOUT NEW YORK LIEN LAW.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of the New York Lien Law.

**NEW YORK LIEN LAW.** In compliance with Section 13 of the Lien Law, the mortgagor will receive the consideration for this mortgage and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply this same first to the cost of improvement before using any part of the total of the same for any other purpose.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Security Instrument:

**Amendments.** What is written in this Security Instrument and in the Related Documents is my entire agreement with Lender concerning the matters covered by this Security Instrument. To be effective, any change or amendment to this Security Instrument must be in writing and must be signed by whoever will be bound or obligated by the change or amendment. Lender and I agree that at any time before the expiration of the draw period specified in the Credit Agreement, upon Lender's discretion, the term of the draw period may be extended or modified.

**Merger.** There shall be no merger of the interest or estate created by this Security Instrument with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Time is of the Essence.** Time is of the essence in the performance of this Security Instrument. This means that all deadlines for performance provided under this Security Instrument must be strictly complied with and that failure to do so will result in a default.

**Waiver of Homestead Exemption.** I hereby release and waive all rights and benefits of the homestead exemption laws of the State of New York as to all Sums Secured by this Security Instrument.

**Waivers and Consents.** Lender will not be deemed to have waived any rights under this Security Instrument unless such waiver is in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right will operate as a waiver of such right or any other right. A waiver by any party of a provision of this Security Instrument will not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Lender, nor any course of dealing between Lender and me, will constitute a waiver of any of Lender's rights or any of my obligations as to any future transactions. Whenever consent by Lender is required in this Security Instrument, the granting of such consent by Lender in any instance will not constitute continuing consent to later instances where such consent is required.

**Waive Jury.** All parties to this Security Instrument hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

I ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS SECURITY INSTRUMENT, AND I AGREE TO ITS TERMS.

THIS SECURITY INSTRUMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS SECURITY INSTRUMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

MORTGAGE
(Continued)

Page 5

Loan No: 885147208

OWNER:

X _Nicola Nucci_ (Seal)
Nicola Nucci

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _New York_ )
) SS
COUNTY OF _New York_ _Queens_ (NY) )

On the _12_ day of _May_ in the year 20_08_, before me, the undersigned, a Notary Public in and for said State, personally appeared Nicola Nucci personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____    My commission expires ___11/20/2010___
Notary Public

_May 12, 2008_

KIMBERLY J MOHAMMED
Notary Public - State of New York
NO. 01MO6188768
Qualified in Queens County
My Commission Expires 11/20/10

SEAL

**Schedule A**

NAME(S):        NICOLA NUCCI

LOAN #:        493793/TOM

LONG LEGAL: ALL THAT CERTAIN PARCEL OR TRACT OF LAND SITUATE IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, STATE OF NEW YORK AND BEING THE SAME REAL PROPERTY CONVEYED TO NICOLA NUCCI BY DEED ON 12/19/2005 AS DOCUMENT NO. 2005000696547 AMONG THE OFFICIAL RECORDS OF THE COUNTY OF KINGS, STATE OF NEW YORK. SAID DEED REFERENCE MADE HEREIN FOR A MORE FULL DESCRIPTION.

BLOCK: 915
LOT: 27

TAX MAP#:        915-27

RMS130120080461423

WHEN RECORDED MAIL TO:
Commerce Bank, N.A. - Attn: File Management
02-2699-4056
2059 Springdale Road
Cherry Hill, NJ 08003

Record and Return to:
Group8, Inc.
144 Oxford Valley Rd
Langhorne, PA 19047

FOR RECORDER'S USE ONLY

885147298

*0113000000008851472980|361323*

## ASSIGNMENT OF RENTS *AND Leases*

THIS ASSIGNMENT OF RENTS dated May 12, 2008, is made and executed between Nicola Nucci, whose address is 762 39th Street, Brooklyn, NY 11232 (referred to below as "Grantor") and Commerce Bank, N.A., whose address is 317 Madison Avenue, 2nd Floor, New York, NY 10017 (referred to below as "Lender").

**Assignment.** For valuable consideration, Grantor hereby assigns and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Kings County, State of New York:

see attached schedule "A"  *Block 915, Lot 27*

The Property or its address is commonly known as 762 39th Street, Brooklyn, NY 11232.

**REVOLVING LINE OF CREDIT.** This Assignment secures the indebtedness including, without limitation, a revolving line of credit, which obligates Lender to make advances to Grantor so long as Grantor complies with all the terms of the Credit Agreement. Such advances may be made, repaid, and remade from time to time, subject to the limitation that the total outstanding balance owing at any one time, not including finance charges on such balance at a fixed or variable rate or sum as provided in the Credit Agreement, any temporary overages, other charges, and any amounts expended or advanced as provided in either the indebtedness paragraph or this paragraph, shall not exceed the Credit Limit as provided in the Credit Agreement. It is the intention of Grantor and Lender that this Assignment secures the balance outstanding under the Credit Agreement from time to time from zero up to the Credit Limit as provided in the Credit Agreement and any intermediate balance.

THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of New York and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 886147208                                                                                                          Page 2

exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**Collection Of Rents By Lender.** Grantor hereby agrees not to pursue any action or conduct designed to discourage any tenant from paying rent to Lender and further agrees not to assert "adequacy of value" of the mortgaged premises and/or other collateral as a defense to any action or claim by Lender to collect rents from tenant(s) of Grantor.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Credit Agreement rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Credit Agreement, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes, with the exception of insurance premiums paid to protect motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Credit Agreement from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Credit Agreement and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Credit Agreement; or (C) be treated as a balloon payment which will be due and payable at the Credit Agreement's maturity. The Assignment also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.If any of the following happen:

   (A) Grantor commits fraud or makes a material misrepresentation at any time in connection with the Credit Agreement. This can include, for example, a false statement about Grantor's income, assets, liabilities, or any other aspects of Grantor's financial condition.

   (B) Grantor does not meet the repayment terms of the Credit Agreement.

   (C) Grantor's action or inaction adversely affects the collateral or Lender's rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. The right to a receiver shall be given to Lender regardless of the solvency of Grantor and without any requirement to give notice to Grantor.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Assignment, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender will be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**ADDITIONAL COLLATERAL.** This Assignment is intended to be absolute and represent further collateral for the obligation of Borrower under the Note and shall be independent of all other collateral pledged by Borrower or Grantor for repayment of the Note secured hereby.

**ASSIGNMENT OF RENTS NOTICE.** This Assignment of Rents and Leases is hereby considered as an absolute assignment.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** What is written in this Assignment and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Assignment. To be effective, any change or amendment to this Assignment must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** This Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Assignment has been accepted by

## ASSIGNMENT OF RENTS
### (Continued)

Loan No: 885147298                                                                                    Page 3

Lender in the State of New York.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor", the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Assignment unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Assignment. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any person may change his or her address for notices under this Assignment by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court finds that any provision of this Assignment is not valid or should not be enforced, that fact by itself will not mean that the rest of this Assignment will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Assignment even if a provision of this Assignment may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor or Related Documents, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**DEFINITIONS.** The following words shall have the following meanings when used in this Assignment:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Nicola Nucci.

**Credit Agreement.** The words "Credit Agreement" mean the credit agreement dated May 12, 2008, with credit limit of $200,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Nicola Nucci.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Credit Agreement or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Credit Agreement or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, including attorneys' fees, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means Commerce Bank, N.A., its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Credit Agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

## ASSIGNMENT OF RENTS
(Continued)

Loan No: 885147298                                                                    Page 4

WAIVE JURY. All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT. THIS DOCUMENT IS EXECUTED ON MAY 12, 2008.

THIS ASSIGNMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS ASSIGNMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

X _____ (Seal)
Nicole Feuci

Signed, acknowledged and delivered in the presence of:

X _____
Witness

X _____
Witness

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _New York_ )
                                    ) SS
COUNTY OF _New York   Queens_ )

On the _12_ day of _May_ in the year 20_08_ before me, the undersigned, a Notary Public in and for said State, personally appeared Nicole Feuci, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her capacity, and that by his or her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

By _____        My commission expires _11/20/2010_
         Notary Public

SEAL

KIMBERLY J MOHAMED
Notary Public - State of New York
NO. 01MO6188766
Qualified in Queens County,
My Commission Expires 11/20/2010

Kimberly J Mohamed

RMS130120080451424

**Schedule A**

NAME(S):      NICOLA NUCCI

LOAN #:       493793/TOM

LONG LEGAL: ALL THAT CERTAIN PARCEL OR TRACT OF LAND SITUATE IN THE BOROUGH
OF BROOKLYN, COUNTY OF KINGS, STATE OF NEW YORK AND BEING THE SAME REAL
PROPERTY CONVEYED TO NICOLA NUCCI BY DEED ON 12/19/2005 AS DOCUMENT NO.
2005000696547 AMONG THE OFFICIAL RECORDS OF THE COUNTY OF KINGS, STATE OF
NEW YORK. SAID DEED REFERENCE MADE HEREIN FOR A MORE FULL DESCRIPTION.

BLOCK: 915
LOT: 27

TAX MAP#:      915-27