UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NICOLA NUCCI,

                              Plaintiff,

                -against-

PHH MORTGAGE CORPORATION, and
COMMERCE BANK, N.A.,

                             Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-2683 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

On February 27, 2014, pro se Plaintiff Nicola Nucci initiated this action to quiet title in the Supreme Court of the State of New York, Kings County, against Defendants PHH Mortgage Corporation ("PHH") and TD Bank, N.A. ("TD Bank").[1] (Not. of Removal (Dkt. 1) ¶ 1.) TD Bank removed the action to this court on April 29, 2014. (Id.) On May 22, 2014, Plaintiff voluntarily dismissed TD Bank. (Stip. of Voluntary Dismissal (Dkt. 10).)

PHH now moves to dismiss the Complaint. (Not. of Mot. to Dismiss (Dkt. 36).) By Order dated October 6, 2015, the court referred PHH's motion to Magistrate Judge Robert M. Levy for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Order (Dkt. 41).) On January 28, 2016, Judge Levy recommended that the court grant PHH's motion to dismiss, and deny Plaintiff's request for leave to amend the Complaint. (See generally R. & R. (Dkt. 42).) For the reasons discussed below, the court ADOPTS IN FULL the R&R, and accordingly, DISMISSES the Complaint.

---

[1] The Complaint named Commerce Bank, N.A. as a defendant. Commerce Bank, N.A. is now known as TD Bank, N.A. (Not. of Removal.)

1

## I. BACKGROUND

### A. Facts[2]

Plaintiff is the owner of the real property located at 762 39th Street, Brooklyn, New York (the "Property"). (Compl. (Not. of Removal, Ex. A) ¶ 1.) On December 20, 2005, Plaintiff, PHH, and non-party Mortgage Electronic Registration Systems, Inc. ("MERS") entered into the Consolidation, Extension, and Modification Agreement ("CEMA"). (CEMA (Compl., Ex. B).) Under the CEMA, Plaintiff is the borrower, PHH is the lender, and MERS is PHH's nominee as the mortgagee of record. (CEMA ¶¶ (A)-(D).) The CEMA was signed by all parties, including Plaintiff, and notarized. (CEMA at 4-5.) It consolidated two existing mortgages encumbering the Property and the promissory notes that they secure: (1) a September 12, 2003, mortgage securing a promissory note with an unpaid principal balance of $398,074.63 ("2003 Mortgage"); and (2) a December 20, 2005, mortgage securing a promissory note for $15,278.17 ("2005 Mortgage"). (List of Mortgs., Notes, & Agreements (CEMA, Ex. A).) Annexed to the CEMA as Exhibits C and D are documents titled the Consolidated Note and the Consolidated Mortgage, respectively. Both are specifically referenced in the CEMA. (CEMA §§ II-IV.) The Consolidated Note contained Plaintiff's promise to pay $413,352.80 plus interest to the holder of the note. (Consolidated Note (CEMA, Ex. C).) This principal amount represented the sum of the unpaid balances of the two notes consolidated by the CEMA. Plaintiff signed the Consolidated Note. (Id. at 3.) There is no signature on the Consolidated Mortgage. (Consolidated Mortgage (CEMA, Ex. D) at 16.)[3]

---

[2] The court adopts the summary of the factual record outlined in the R&R. (See R. & R. at 1-4.) Familiarity with the factual record and procedural history is assumed, and therefore only those facts pertinent to this Memorandum and Order are included here.

[3] The court notes that the 2005 Mortgage and the CEMA are both dated December 20, 2005. It appears that the parties entered into the 2005 Mortgage and associated note first. They then executed the CEMA to consolidate this new mortgage with the 2003 Mortgage. Although executed on the same day, the 2005 Mortgage is separate and

## B. The Report and Recommendation

On January 28, 2016, Judge Levy issued the R&R recommending that the court grant PHH's motion to dismiss, and deny Plaintiff's request for leave to amend the Complaint.

Judge Levy first recommended rejecting Plaintiff's argument that title to the Property should be quieted to him because any assignment of mortgages by MERS relating to the Property was invalid. (R. & R. at 5-6.) Judge Levy found that Plaintiff lacked constitutional and prudential standing to mount such a challenge. (Id.) Plaintiff lacked constitutional standing because he failed to plausibly allege an injury stemming from assignments by MERS. (Id.) Plaintiff lacked prudential standing because he was not a party to, or a third-party beneficiary of, any MERS assignment. (Id. at 6.) Judge Levy also rejected Plaintiff's reliance on the allegation that the Consolidated Mortgage was unsigned because it is not a cognizable basis for an action to quiet title. Under New York law, "a suit to quiet title does not arise when 'the invalidity will necessarily appear in any proceeding taken to enforce title under it.'" (Id. at 8 (quoting Herbert v. HSBC Mortg. Servs., No. 13-CV-322 (NGG) (RER), 2014 WL 3756360, at *9 (E.D.N.Y. June 30, 2014) (quoting Townsend v. City of New York, 77 N.Y. 542, 546 (1879))).)

Judge Levy also recommended denying Plaintiff's request for a declaration barring PHH from commencing a foreclosure action relating to the Property. (Id. at 7.) Judge Levy found that under New York law, there is no justiciable controversy where no foreclosure action has been commenced. (Id.) Moreover, Plaintiff's bare assertion that PHH fraudulently obtained the notes and mortgages relating to the Property are insufficient as a matter of law. (Id.)

---

distinct from the CEMA and the Consolidated Mortgage attached as an exhibit. PHH appears to have confused the two. (See Mem. of Law in Supp. of Def. PHH Mortg. Corp.'s Mot. to Dismiss (Dkt. 37) at 7 (attaching the 2005 Mortgage as an exhibit and arguing that the Consolidated Mortgage attached to the Complaint was missing the pages bearing Plaintiff's signature).)

3

Finally, Judge Levy recommended denying Plaintiff leave to amend the Complaint because any amendment would be futile. (Id. at 9.)

### C. Plaintiff's Objections to the Report and Recommendation

On February 9, 2016, Plaintiff timely objected to the R&R. (Pl.'s Obj. to R. & R. ("Pl.'s Obj.") (Dkt 43).) PHH responded to Plaintiff's objections on February 23, 2016. (Def.'s Mem. of Law in Opp'n to Pl.'s Obj. to R. & R. ("Def.'s Resp.") (Dkt. 44).)

Plaintiff first repeats his arguments that he has standing to challenge assignments by MERS regardless of whether he is a party to them, and that the Consolidated Mortgage was unsigned and therefore void ab initio. (Pl.'s Obj. at 2-3.) Plaintiff then asserts for the first time that third party Fannie Mae claims to be "the owner and holder of the note and mortgage," and argues that the existence of such a third party claim satisfies the standing requirements set forth in the R&R. (Id. at 4-5.) Finally, Plaintiff seeks leave to amend to name "the real party in interest as now Fannie Mae is stating they are the real party in interest, not PHH." (Id. at 5.)

## II. STANDARD OF REVIEW

In reviewing a magistrate judge's report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. To obtain de novo review, an objecting party "must point out the specific portions of the report and recommendation to which [that party] object[s]." U.S. Flour Corp. v. Certified Bakery, Inc., No. 10-CV-2522 (JS), 2012 WL 728227, at *2 (E.D.N.Y. Mar. 6, 2012); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply

reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002). Portions of an R&R to which a party makes no objection are also reviewed for clear error. U.S. Flour, 2012 WL 728227, at *2.

Where a pro se party objects to an R&R, "the court reads his objections 'liberally and will interpret them to raise the strongest arguments that they suggest.'" Velasquez v. Metro Fuel Oil Corp., 12 F. Supp. 3d 387, 398 (E.D.N.Y. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 780 (2d Cir. 1994)). However, a court "need not argue a pro se litigant's case nor create a case for the pro se which does not exist." Molina v. New York, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

## III. DISCUSSION

The court finds that Plaintiff has put forward specific objections to the R&R, and therefore, performs a de novo review of these objections. With respect to any portion of the R&R that is not specifically objected to, the court reviews for clear error, and finds none. Although Plaintiff repeats several of the arguments made before Judge Levy (and at times attempts to introduce new, conclusory allegations), the court construes his brief to object to Judge Levy's core holdings that: (1) Plaintiff lacked standing to challenge any assignment by MERS (R. & R. at 5-6); (2) there is no actionable claim to quiet title even if the Consolidated Mortgage was unsigned (R. & R. at 8); and (3) leave to amend should be denied because any amendment would be futile (R. & R. at 9). Applying de novo review, the court ADOPTS the portions of the R&R specifically objected to, and, like the R&R, GRANTS PHH's motion to dismiss and DENIES Plaintiff leave to amend.

5

## A. Standing

In his objections, Plaintiff relies on Glaski v. Bank of America, N.A., 160 Cal. Rptr. 3rd 449 (Cal. Ct. App. 2013), to argue that a borrower has prudential standing to challenge the assignment of his loan to a third party even if the borrower is not a party to the assignment. (Pl.'s Obj. at 2-3.) The court is not persuaded. As Judge Levy explained, the weight of authority in this district is contrary to Plaintiff's position. (R. & R. at 5-6 (citing Zutel v. Wells Fargo Bank, N.A., No. 12-CV-3635 (RRM) (VMS), 2014 WL 4700022, at *3-6 (E.D.N.Y. Sept. 22, 2014), Tamir v. Bank of N.Y. Melon, No. 12-CV-4780 (DLI) (JO), 2013 WL 4522926, at *3 (E.D.N.Y. Aug. 27, 2013)).) To have standing, Plaintiff must either be a party to, or a third party beneficiary of, the challenged assignment. (Id. at 6.) Plaintiff offers no New York federal or state case law suggesting otherwise, and the court finds none. Judge Levy correctly decided that Plaintiff does not have standing to challenge MERS assignments to which he was not a party.

Plaintiff alternatively argues that he has prudential standing because Fannie Mae, a third party, has allegedly asserted an interest in the notes and mortgages related to the Property. (Pl.'s Obj. at 4-5.) Plaintiff's argument appears to flow from a mistaken reading of the Report and Recommendation. Judge Levy found that Plaintiff lacked standing to challenge an assignment by MERS because Plaintiff was not "a party to, or a third-party beneficiary of, any such assignment." (R. & R. at 6.) Plaintiff misunderstands the R&R if he believes it found that he would have standing if a third party asserted an interest from the assignment. Whether a third party asserts an interest is irrelevant to Plaintiff's standing to challenge an assignment to which he is not a party.

Plaintiff further asserts, for the first time in his objections, that "he is continuing to suffer harm on a regular basis therefrom [with] each new invoice, each new demand . . . ." (Pl.'s Obj. at 4.) Judge Levy had found that Plaintiff lacked constitutional standing to challenge any MERS assignments because Plaintiff failed to allege a plausible injury from it. (R. & R. at 5-6.) To the extent that Plaintiff now argues that he has constitutional standing to sue because he was harmed by having to pay back his loans at an interest rate higher than he should be charged (or that he has to repay at all), the court finds his conclusory allegations insufficient to survive a motion to dismiss. The court first notes that "a party has 'no right to present further testimony when it offered no justification for not offering the testimony at the hearing before the magistrate.'" Rivera v. Ercole, No. 09-CIV-5547 (DAB), 2013 WL 4414863, at *1 (S.D.N.Y. Aug. 15, 2013) (quoting Pan Am. World Airways, Inc. v. Int'l Bros. of Teamsters, 894 F.2d 36, 40 n.3 (2d Cir. 1990)). Regardless, as Judge Levy noted, Plaintiff has never disputed that he received the proceeds from the notes that were consolidated in the CEMA (R. & R. at 6), and in fact appears to concede that he is obligated to repay these loans (see Pl.'s Combined Opp'n & Mem. of Points & Auths. in Supp. of Pl.'s Opp'n to Def. PHH Mortg. Corp.'s Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. 35) at 27 (noting he is deprived "of the right to cure by paying the 'lender'")). In any event, Plaintiff's belated allegations still fail to connect the alleged harm to any MERS assignment. Plaintiff lacks constitutional standing to argue the invalidity of a MERS assignment because he has not alleged a plausible injury.

### B. Unsigned Consolidated Mortgage

Judge Levy found that the unsigned Consolidated Mortgage cannot serve as the basis of a quiet title action because "a suit to quiet title does not arise when 'the invalidity will necessarily appear in any proceeding taken to enforce title under it.'" (R. & R. at 8 (quoting Herbert, 2014

WL 3756360, at *9 (quoting Townsend, 77 N.Y. at 546)).) While this may be the case for a common law claim to quiet title, there is no such restriction for a quiet title action pursuant to Article 15 of New York's Real Property Actions and Proceedings Law ("RPAPL"). See N.Y. Real Prop. Acts. Law § 1501(2) ("Such action may be maintained, even though the defendant's claim appears to be invalid on its face . . . ."); cf. Herbert, 2014 WL 3756360, at *10 (dismissing statutory quiet title claim because defendants do not assert a claim adverse to plaintiff, even though common law counterpart was dismissed on the ground that the mortgage was invalid on its face). Plaintiff clarified in his opposition to Defendant's motion to dismiss that the sole cause of action asserted in the Complaint was to quiet title pursuant to the RPAPL. (Pl.'s Opp'n at 12.) To state a claim under the RPAPL, Plaintiff must, among other things, sufficiently allege "the existence of a bona fide justiciable controversy as to whether the subject property is wrongfully encumbered." Jahan v. U.S. Bank Nat'l Ass'n, 9 N.Y.S.3d 65, 66 (App. Div. 2015). The court finds that Plaintiff failed to meet his burden.

As an initial matter, Plaintiff's repeated and unequivocal assertions that he did not execute or agree to the consolidation is baffling. (See Pl.'s Obj. at 3 ("Plaintiff did not execute this agreement because he did not agree to this."), 4 ("Instead of agreeing, Plaintiff did not sign the mortgage . . . ."); see also, e.g., Compl. ¶¶ 14, 16, 19(1) (referring to "unsigned note and mortgage," "unsigned note and deed of trust," and "unsigned notes").) He clearly did. The copy of the CEMA that Plaintiff attached to the Complaint was notarized and bears his signature. (CEMA (Compl., Ex. B) at 4-5.) Plaintiff also signed the Consolidated Note, which was referenced in the CEMA and attached to it as Exhibit C. (See CEMA §§ II-III; Consolidated Note (CEMA, Ex. C) at 3.) The interest rate that Plaintiff agreed to pay after consolidation was listed in the Consolidated Note. (Consolidated Note at 1.) The documents that Plaintiff himself

put forth contradict his claim that he never agreed to the CEMA. The Consolidated Mortgage attached as Exhibit D to the CEMA was not signed, but it was unmistakably referenced in the CEMA. (CEMA §§ III-IV). Plaintiff does not allege that he did not know about it or had not seen it. Indeed, Plaintiff argues that he chose not to sign it. (See Pl.'s Obj. at 4.) However, by signing the CEMA, Plaintiff agreed to be bound by its terms, as well as the documents annexed to it and to which it specifically referred, i.e., the Consolidated Mortgage. See Crabtree v. Elizabeth Arden Sales Corp., 110 N.E.2d 551, 554 (N.Y. 1953) ("[S]igned and unsigned writings [may] be read together, provided that they clearly refer to the same subject matter or transaction."); In re Bd. of Comm'rs of Wash. Park, 52 N.Y. 131, 134 (1873) ("A paper so referred to and described, in a written instrument, that it may be identified beyond all reasonable doubt, may be, by such reference, made a part of the instrument, as if incorporated into the body of it."). Any argument that Plaintiff did not enter into the CEMA is without merit.

Even if the court accepts Plaintiff's untenable theory and isolate the unsigned Consolidated Mortgage from the signed CEMA to which it was incorporated, Plaintiff's claim still fails because the Consolidated Mortgage is not a new mortgage encumbering the Property as Plaintiff claims. "A consolidation of outstanding loans is a device intended for the convenience of only the contracting parties." F.D.I.C. v. Five Star Mgmt., Inc., 692 N.Y.S.2d 69, 74 (App. Div. 1999)). A consolidation agreement combining multiple outstanding mortgages into a single lien is not considered a new mortgage where no new money is included in the consolidation. See D. Kirk Drussel et al., 1 Mortgages and Mortgage Foreclosure in New York § 17:13 (2015); see also Benson v. Deutsche Bank Nat. Trust, Inc., 970 N.Y.S.2d 794, 797 (App. Div. 2013) ("Where, as here, balances of first mortgage loans are increased with second mortgage loans and CEMAs are executed to consolidate the mortgages into single liens, the first notes and mortgages

still exist . . . ."). A new mortgage is deemed to be created only if the consolidation agreement "creates a new lien upon property not originally covered by the prior instruments." See Drussel, supra.

Here, no new money was included in the CEMA. The CEMA consolidated two existing mortgages and the promissory notes secured by them: (1) a September 12, 2003, mortgage securing a promissory note with an unpaid principal balance of $398,074.63 ("2003 Mortgage"); and (2) a December 20, 2005, mortgage securing a promissory note for $15,278.17 ("2005 Mortgage"). (List of Mortgs., Notes, & Agreements (CEMA, Ex. A).) There is no dispute that Plaintiff executed and notarized these mortgages. See Automated City Register Information System, Office of the City Register, New York City Department of Finance, http://a836-acris.nyc.gov/CP/ (last visited March 15, 2015).[4] Plaintiff and PHH agreed among themselves to create a single lien with the CEMA (List of Mortgs., Notes, & Agreements), but they did not extinguish or replace the two existing mortgages. See Bechard v. Monty's Bay Recreation, Inc., 11 N.Y.S.3d 695, 696 (App. Div. 2015) ("It is well established that a subsequent note does not discharge the original indebtedness secured unless there is an express agreement between the parties." (quoting Bank of N.Y. v. Cerasaro, 470 N.Y.S.2d 894 (App. Div. 1983))); Bodden v. Kean, 950 N.Y.S.2d 490 (Sup. Ct. 2010) (finding consolidation of two prior mortgage loans were "not a refinancing or replacement of an existing mortgage loan"). Plaintiff does not argue otherwise. Plaintiff also appears to acknowledge his obligation to repay the notes secured by the 2003 Mortgage and the 2005 Mortgage. (See Pl.'s Opp'n at 27 (noting he is deprived "of the right to cure by paying the 'lender'").) Plaintiff thus fails to allege that the Property is

---

[4] "It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed in other courts and other public records." See Herbert, 2014 WL 3756360, at *2.

10

"wrongfully encumbered," and his action to quiet title must be dismissed for failure to state a claim.

C.  **Leave to Amend**

Plaintiff also seeks leave to amend the Complaint to name Fannie Mae as a defendant, doing so for the first time in his objections to the R&R. Plaintiff alleges that "Fannie Mae is now claiming that they are the owner and holder of the note and mortgage." (Pl.'s Obj. at 4.) Plaintiff appears to want to replace PHH as defendant. (See id. ("The Court should grant leave to amend to name the real party in interest as now Fannie Mae is stating they are the real party in interest.").) Regardless of whether Plaintiff's intention is to replace PHH with Fannie Mae, neither a substitution nor an addition of a new defendant affects the core holdings in the R&R and this Memorandum and Order. First, Plaintiff does not have standing to challenge any assignment by MERS because Plaintiff is not a party to any such assignment. Second, there is no viable cause of action in New York for a declaration preemptively barring the commencement of foreclosure proceedings. Third, there is no basis for a quiet title action because the record shows that Plaintiff agreed to the CEMA and he has failed to allege that the Property is "wrongfully encumbered." Swapping Fannie Mae for PHH does not cure any of these fatal deficiencies. Plaintiff's request for leave to amend is therefore futile and must be denied.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the court ADOPTS IN FULL the R&R, and GRANTS Defendant PHH's motion to dismiss and DENIES Plaintiff's request for leave to amend. The Complaint is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
March 15, 2016

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge